Traci L. Brown
417 E. Wikieup Lane
Phoenix, Arizona 85024
6027024381

FILED ___ LODGED
RECEIVED ___ COPY

APR 1 1 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Traci L. Brown,<br><br>      Plaintiff,<br><br>v.<br><br>Bayview Loan Servicing LLC,<br><br><br><br>      Defendant. | CASE NUMBER:  CV-17-1077-PHX-SPL<br><br><br>**COMPLAINT** |

## Jurisdiction

This court has jurisdiction over this matter pursuant to Breach of contract with my mortgage servicer and predatory lending practices  §§ .  The plaintiff is a resident of Phoenix, Maricopa County, Arizona and a citizen of the United States.  The defendant, Bayview Loan Servicing LLC, is a resident of Coral Gables, FL and a citizen of the United States.  The cause of action arose in the Phoenix division.

## Complaint

I filed a chapter 13 bankruptcy in September of 2011. My mortgage note was transferred to Bayview Loan Servicing, LLC the same month having me to make my first payment October of 2011. I told my bankruptcy lawyer that I could not pay his fee of 1500.00 and my mortgage as I did not have enough. He claimed no problem I will put one payment in the bankruptcy and you continue to pay your mortgage starting in November of 2011. I made my payments as I was suppose to and about 3 months into the bankruptcy I got a letter from Bayview Loan Servicing, LLC that my payment jumped up about 150.00. I was confused and called them. I have a fixed conventional mortgage from my purchase of my home in July of 2005 and this had never happened before. They answered the phone call and stated "Your payment went up that amount because you missed a payment". I said I ABSOLUTELY did not, I have never missed a payment on my mortgage. I continued to say that if they were referrring to the one payment in October of 2011 that was in the bankruptcy. They stopped me and said "Your in bankruptcy"? I said yes. I filed chapter 13 bankruptcy in September of 2011. They said they could not talk to me any longer and would have someone from the bankruptcy department call me. Two days later a lady called me and stated, "Oh, your payment didn't go up because you missed a payment, it is because you don't

have hazard insurance. I said I ABSOLUTELY do to. I have never had a lapse in my homeowners insurance and have the same homeowners insurance policy today that I did when I bought the home. Dan Firth w/American Family Insurance. I said I would have him call them. She worked with me and we got my payment to around the amount I was paying before they sent the letter. This continuued off and on over the years with jumping payments until I got the dunning letter in July of 2016 from Bayview's lawyers. I also had asked the lady that first day I

talked to her in Jan. 2012 that I wanted them to send me statements and where my money is being applied. She told me that they couldn't send me anything unless I wrote a letter stating I knew I was in bankruptcy but was requesting statements. I did just that and have my copy of that letter. I actually over the years since have faxed them a letter requesting I wanted statements 4 or 5 times to no avail. They never sent me anything. In July of 2016 I get a letter from Bayview's lawyer saying that I owed 6000.00 or they were removing me from my vacation of stay. I was dumbfounded because I completed my bankruptcy successfully in August of 2016 and made all my payments. I hired a lawyer beginning of August 2016. She told me she was going to help and that none of this made sense what the lawyers were sending to me. She also said pay

her instead of Bayview that month since they were already claiming I was in arrears of 6000.00. I paid her 750.00. Three weeks into this lawyer saying she was going to help and find out how I even got in this position all she wanted me to do was sign a loan modification. I kept telling her NO. i SHOULD NOT even be in this position. I want an audit of my loan and why I was never told that I was in trouble with my loan. I had to get rid of her. I started researching and trying to get someone to help me get to the bottom of how in the hek this has happened as I made my payments and successfully completed my bankruptcy. In October I got ahold of a lawyer Beth Findsen that acknowledged my pain and suffering and told me YES. Bayview is dirty, dirty, dirty. To shorten bc I don't have the space I wrote an NOE letter and 3 weeks later Bayview cancels the foreclosure apologizes to me, puts 30,000 into suspense account and says they will redo payments as per the bankruptcy plan and give me a new payment and payoff. They started a 2nd foreclosure.

**Demand**

I want the court to stop and remove the wrongful foreclosure and I want Bayview Loan Servicing to give me back my good standing on my home I had before they got their hands on my loan from it being transferred to them in October of 2011. They have ruined my credit, my loan has a plethora of wrong charges and fees added to my loan that are illegal, they have put me through the most devastating financial crises I have ever imagined and I want to sue them for what they have done to me, my spirit, my grief, my health, the money I have had to put out for lawyers, titles, documents and money for the hardship they have put me through. But most of all I want a different servicer that is honest and not fraudulent and trying to steal my home of 14 years.. **Damages: $80,000.** Because I have proof that Bayview Loan Servicing, LLC didn't even purchase my home correctly. The pooling and servicing agreement and Quiet Title will show they have been negligent since the inception of my loan, let along putting all kinds of wrongful charges on my account (predatory accounting practices). I believe that Bayview Loan Servicing, LLC should pay my home off since they were trying to steal it from me anyway. I had my principal balance down to 63,000.00 but Bayview in their fraudulent practices has put my loan back up to 72000.00 only 7,000.00 away from what I purchased it for in 2005 (79,000.00). They should actually be put out of business in my opinion because they planned this entire scheme because they did not think I would successfully complete my bankruptcy and they took advantage of me in my bankruptcy!! Some of the money will go to cleaning up my credit due to Bayview and my health since it has declined since this started (I am on disability as it is and Bayview has made me sicker). Also, all the money and time I have put into research and lawyers and documents since this started last July of 2016.. The Plaintiff wants a trial by jury.

Dated: 4/11/17

_Traci Lynn Brown_

**Signature of Pro Se Plaintiff**
**Traci L. Brown**
**417 E. Wikieup Lane**
**Phoenix, Arizona 85024**
**6027024381**

Your Honor,

I am also requesting that my foreclosure be stopped. The 2nd foreclosure auction date is 4/25/17. I am attaching a brief summary of when my story financial crisis nightmare began and has gotten worse as of today 4/11/17. I did speak w/ my 7TH appointed Point of Contact Jared Simmons since aug of 2016 - (they continually switch as soon as an answer is expected & need time to review file). I spoke to Jared about sending the approved Loan Modification paperwork into stop foreclosure and his reply was (have recording on phone) that "yes, I can send in the approved modification PW, however I waive all my rights to receive the credits due from the date I sign the loan modification.

Your Honor, one last thing, this is illegal accounting activity (Predatory Lending) and after what Bayview Loan servicing has put me through since last July of 2016 - I want this company to right their wrongs and for this not to be able to (over)

to another honest, hard-working family.
This has been very devastating and my home
is the most successful thing We accomplished
all my life.

Thank you.

Also attaching "Quiet Title" I purchased
for $750.00 showing Robosigning. And
NOE (Notice of Error) Resolution letter showing
credits I am requesting since October of 2016.

I am asking a request for a jury trial + will
have all other documents needed for proof
that Bayview Loan Servicing, LLC set me up
for the 1st foreclosure which led to the
2nd foreclosure and in my opinion + research
was trying to steal my home. I'd like the
chance to prove my case + evidence.

Thank you,

Traci Lynn Brown

# TRACI BROWN
## 417 E. WICKIEUP LN
## PHOENIX, AZ 85024

October 19, 2016

Ms. Chantal Klein                              (via US Mail with delivery confirmation and email)
Ms. Charlotte Hege Pfi
Bayview Loan Servicing, LLC
Customer Support
4425 Ponce de Leon Boulevard, 5th Floor
Coral Gables, FL 33146

Re: Error Resolution Notice under 12 C.F.R. §1024.35

Loan Number:  0000311043
CFPB Complaint No. 160911-000026

I am writing to request correction of the error described below in regard to the mortgage on my property at 417 E. Wickieup Lane; Phoenix, AZ 85024.

Your Mortgage Statement dated September 16, 2016 claims that I "must pay" $7, 036.45 "to bring [my] loan current."  Further, you calculate this sum as follows:

$757.47 due 04/01/16
$684.66 due 05/01/16
$684.66 due 06/01/16
$684.66 due 07/01/16
$684.66 due 08/01/16
$684.66 due 05/01/16

This is incorrect.  I made all of my pre- and post-petition payments in a Chapter 13 bankruptcy, and recently completed the Plan successfully and received a discharge. *In re Brown*, No. 2:11-bk-27750-SHG (D. Ariz. Aug. 23, 2016)(Doc. 44).  During the bankruptcy, I made the payments directly to your company, in accordance with the confirmed Plan. Consequently, I was shocked to receive a dunning letter from Bayview attorney, Edward G. Schloss, Schloss, claiming that I was in default on my loan.

The Customer Account Activity Statement ("CAAS") dated September 28, 2016, provided by Bayview after I submitted a CFPB complaint, demonstrates that Bayview incorrectly imposed forced-place-insurance on my account, despite the fact that I had consistent insurance, with no lapse in coverage, as submitted to you frequently.  This was charged to me as $1,068.00 on January 21, 2014.   Later, Bayview's CAAS demonstrates that Bayview

# TRACI BROWN
## 417 E. WICKIEUP LN
## PHOENIX, AZ 85024

input a series of "misapplication reversals" on March 12, 2015 but did not account for the spiraling late charges and pyramiding of fees caused by Bayview's errors. Please investigate this matter and adjust the purported "arrearage" accordingly.

Further, Bayview appears to have charged attorney fees and other miscellaneous fees to my account without authorization, during the pendency of the bankruptcy with my payments current. This violates the terms of payment application of the Note and Deed of Trust. *See, e.g.,* Bayview CAAS dated September 28, 2016, Attorney Advance 2/18/14 ($50.00), Property Preservation Fee on 9/9/16 ($11.00), 8/12/16 ($11.00), 7/22/16 ($11.00), 6/6/16 ($11.00), 5/10/16 ($11.00), 4/25/16 ($11.00), 3/16/16 ($11.00), 3/24/15 ($14.00), 2/23/15 ($14.00) Late Charge on 9/16/16, Attorney Advance 8/29/16 ($555.00), Attorney Advance 4/12/16 ($50.00).

Also, please explain the "Misc. Repayment" of 4/14/15 ($75.00) and 2/5/16 ($75.00), the "Misc. F/C and B/R Expenses" of 3/25/15 ($75.00) and 1/28/16 ($75.00), and the Corp. Advance Adjustment of 9/27/16 ($999.00).

Your escrow "advancements" for Homeowner's Insurance were not warranted because I had continuing coverage and furnished proof to you. You assessed reimbursement of the following unwarranted advancements of insurance premiums to my account, before applying my payments:

| | |
|---|---|
| $1,068.00 | 1/20/14 |
| $ 635.43 | 1/19/15 |
| $ 819.80 | 8/15/16 |
| $1,154.00 | 4/14/16 |

You failed to correct these errors until March 12, 2015, and never corrected the 2016 errors. As such, you did not properly credit the following payments to principal and interest.

| | |
|---|---|
| $553.00 | 1/21/14 |
| $553.00 | 2/24/14 |
| $600.00 | 3/28/14 |
| $600.00 | 5/30/14 |
| $600.00 | 6/20/14 |
| $600.00 | 7/21/14 |
| $600.00 | 8/21/14 |
| $600.00 | 9/30/14 |
| $600.00 | 10/23/14 |
| $600.00 | 12/8/14 |
| $600.00 | 12/29/14 |
| $600.00 | 2/6/15 |

**TRACI BROWN**
**417 E. WICKIEUP LN**
**PHOENIX, AZ 85024**

| | |
|---|---|
| $600.00 | 2/24/15 |
| $600.00 | 3/19/15 |
| $600.00 | 5/18/15 |
| $600.00 | 6/19/15 |
| $600.00 | 7/1/15 |
| $600.00 | 8/21/15 |
| $600.00 | 9/24/15 |
| $600.00 | 10/20/15 |
| $600.00 | 11/01/15 |
| $200.00 | 1/25/16 |
| $200.00 | 1/25/16 |
| $200.00 | 1/25/16 |
| $600.00 | 2/22/16 |
| $600.00 | 5/19/16 |
| $500.00 | 7/5/16 |
| $175.00 | 7/5/16 |
| $687.00 | 7/18/16 |

[Bayview Ledger].

Please investigate and rectify these errors as soon as possible.

Also, please provide an accurate mortgage payoff balance, an accurate reinstatement amount, the correct monthly payment amount, and supporting documentation.

If you need to contact me, I can be reached at the above-identified address, or at tbrown134@cox.net.

Sincerely,

Traci Brown

Cc:    Consumer Financial Protection Bureau (via upload at
       www.consumerfinance.gov/complaint)
       1700 G. Street NW
       Washington, DC 20552

       Office of the Arizona Attorney General (via mortgagefraud@azag.gov)
       Consumer Information and Complaints
       1275 W. Washington St.
       Phoenix, AZ 85007-2926

I purchased my home in July 2005.  In October of 2011 I filed a chapter 13 bankruptcy.  The very month that I filed, my loan was either transferred from M&T Bank to Bayview Loan Servicing LLC or Bayview bought the loan (I dont know) I was sent a letter that stated I just needed to start making my payments to Bayview Loan Servicing.  I informed my bankruptcy lawyer that I could not pay his entire asking fee and make my mortgage payment for that month. He said that is ok, he'll put one payment in the bankruptcy paperwork.  I said ok.  I made my first mortgage payment to Bayview Loan Servicing LLC the next month, and continued to make my monthly mortgage payments as I had previously for seven years to M&T.  I am on disability and have been since 2011.  I get paid once a month and send my payments to all my bills usually between the 15th of the month and 25th of the month.  Approximately 2 -3 months into the bankruptcy I received a letter/statement (not a complete statement as it did not have the loan amount owed, the principal or anything else - just that my payment went up about 150.00.  It was showing payment due 750+.  I,  for seven years was making my payment of 553.00 to M&T with no problems whatsover and I know that my fixed conventional loan made sure there were no changes of this sort..  I called Bayview Loan Customer Service number on that peice of paper (bc Bayview Loan Servicing was not sending me ANYTHING in the mail, no correspondence regarding my loan, no statements, nothing.)  All i ever received from Bayview Loan Servicing was a welcome letter from them buying the loan from M&T - see attached).  I got a customer representative on the phone and said I needed to talk to someone regarding my loan and gave her my account number that I had from M&T.  I said I wanted to talk to someone regarding my mortgage payment going up.  She said Oh, that is bc you missed a payment.  I said I most certainly did not!!  I said if you are referring to the one payment that my bankruptcy lawyer put in the paperwork.  After saying that she cut me off and said, Oh, your in bankruptcy.  I said yes, I filed Chapter 13 in October 2011.  She put me on hold, came back after about 2-5 minutes and said Mam, I cannot talk to you, but I will have a representative from our bankruptcy department call you back..I said when can I expect a call.  She said within 3-5 business days. We ended our call.  I received a call back from a Janelle Fernandez in the bankruptcy department and I asked her about my payment jumping up  a hundred and fifty dollars and why bc I had a conventional fixed loan.  She stated that they showed me missing a payment, but that they were going to straighten everything out and my payment was 564.67.  I said thank you, but my payment at M&T was 553.00 do you know why it would even be 11.67 higher.  She said she would review my file and get back with me.  I stated to Janelle before hanging up that I haven't received anything from her company except a welcome letter with a customer service number and that I wanted to get my statements sent to me so I can know where my money is going and where it is being applied and that way I know with issues as this what has been done and where the error might be.  She said I had to handwrite a letter stating that I knew I was in bankruptcy and sign it and they would get statements out to me.  I said ok and did just that.  Attached letter is dated March 15,2012.  I continued to make payments of 564.67 even though I is going. (letter attached).  About a year goes by and I continued making the 612.00 payments, I get a statement in the mail dated December 27, 2013.  I waited until the holidays were over and called Bayview Loan Servicing AGAIN!  was not satisfied with Janelles conversation or outcome, bc she and no one in the company could tell me what was going on and why the payment(s) were jumping all over.  My many questions were compounding every month with Bayview and I was constantly in a state of miscommunication from the inception of this

company buying my loan from M&T. As I stated earlier and will state again. I had not one issue from July 2005 until the very month Bayview Loan Servicing LLC bought my loan. In the latter part of March 2012, I get another call from the bankruptcy department telling me my payment is 612.00 due to not missed months of hazard insurance on my home. I said there is absolutely no way this is correct. I'm very disturbed at this point with the accounting and practicing services of this company, and I cannot get anyone there to send me any documents or explanations of what is going on with my loan. I again call my American Family insurance man that has been with me since I purchased the home in 2005 and he tells me dont worry Traci I will call them and get this straightened out. You are and have been covered for hazard insurance since you purchased the home. I thanked Dan from American Family and continued to call Bayview Loan Servicing again to talk to someone in charge. They again transferred me to the bankruptcy department to leave a message. I get a call from a customer service representative in the bankruptcy department telling me that they did investigate and found my payments are 553.00. I said thank you, but I need documentation showing that it was in Bayviews error and I would like interest and explanations and documentation that this is all fixed. She again told me I needed to fax a letter stating that I am requesting statements and so forth bc they could not send me any documentation while I was in bankruptcy. I was livid!! I told her this is not right. Something is going on with my loan and I have the right to have it fixed and an explanation of where my funds are going and being applied to. She said mail the letter and she will get the information to me. But being that she did tell me my payment was down to around what I was paying M&T, I thought they were at least listening. However I did tell her that I had already mailed a letter back in March of 2012 requesting statements and no one acknowledges receiving it. Would she please have a manager call me regarding my loan with your company. No call back on my request for explanations as to why my oayments are jumping all around or if they received my letter stating that I want to receive statements monthly to show where my money They transferred me to the bankruptcy department. I said I NEED to speak to someone regarding a statement i received in the mail (document attached). Now you claim I owe $1,106.00 and you have my payment of $553.00 listed under unapplied suspense. What the HELL is going on with my loan??? This representative put me on hold and I got transferred to some guys voicemail to leave a message. I continued throughout 2014 and 2015 to get some answers or someone in charge or documentation of something - I did not feel acknowledged as a borrower from this company at all. They have treated me with disrespect from the very beginning of inception. I was telling my mother about all of this and she said write everything down with dates and after your bankruptcy is done, we'll call them and straighten everything out. In may of 2016 I receive a letter in the mail from my bankruptcy attorney saying my payment has again changed to 684.66. My mother was here at the house with me when I got the letter from the mailbox. I said what the hell Mom...What is going on with this mortgage lender. They are saying my payments went up again to 684.66. She read it and agreed well who is this from Dennis Riccio or Bayview. I said I don't know mom there is no letter or anything with this. I I will call Dennis and ask him if he knows what this is and whats going on. I get involved with my sons court hearing and had to put calling Dennis to the side. I was having some major hardship going on with my 26 year old son that was having me very depressed alot of times but I went ahead and paid they're jumping payment again with no letter of explanation for May 2016 payment and June 2016 payment in money orders. I told my mom, I was very

mad at this point and was going to go ahead and pay the 684.66 bc I only had two bankruptcy payments left and then I was going to ask for the CEO or someone high up in the company to explain why my loan hasn;t been services correctly and explanations for the jumping payments and total disregard of my requests since October 2011. Finally I try calling Dennis again, left a message in his voicemail. We played phone tag for a few days and then I got his call. This is now July 20, 2016 I receive a 4 page letter by email from my bankruptcy attorney in May of 2016 asking me if I knew I was in default on my mortgage. I said NO i dont know what your talking about. Now, I wasn't happy at all bc number one I hadn't heard from my bankruptcy lawyer Dennis Riccio in approximately 2 to 2 ½ years, so I was a little taken back about his calling me and all of a sudden talking to me about my mortgage.. He said I sent you an email with a copy of their attorneys letter. I was confused and shaken up that something like this could be happening when no one informs you of anything. Well Dennis Riccio asked me if I was blaming him with a little anger in his voice. I said No, Im not blaming you, I just want to know whats going on....He said I'll call Bayview and try and get some answers. Dennis called me back the very next day as well as emailed me another letter he had and this is when him and I parted ways. He started asking me if I sent in my Chapter 13 discharge and wanted to know if I made all my bankruptcy payments and told me to send certificate to him. I told him Dennis I have been dealing with Lisa in Ed Maneys office (the trustee)for quite some time now and I am going to go ahead and send it to her. I also informed him I wasnt happy bc I over the last year or so have been getting letters and calls from the IRS which I thought when I was in your office you told me this IRS issue in the bankruptcy and not to worry. He said you know what Im just trying to help you. I said well I don't know between the tax issue and now this mortgage issue, this is when he again said are you blaming me. I said no I am not Im just confused. We ended the call. Later that evening I get a text from him that he is withdrawing from my bankruptcy case **(Documents attached - also in one of his documents where he shows me in handwriting where he withdraws, he also states talking to Edward Schloss - Bayviews attorney that he asked him too why did the payments go up. And if you'll notice Edward Schloss response was Im not sure, we'll look into that. It seems absolutely no one knows whats going on with my loan, not even the attorney. But they have no problem taking me into foreclosure?!? Also please note that Dennis says he only received the same letter that I said I only received - not two of them as Edward Schloss states that I received two of them). I never got any kind of notice that I was in this position. Why wasn't I aware that this company was puttting my monthly payments as partial payments????).** I was so confused about everything and felt like my whole world was crashing in. I have never felt like everyone in this world is a cheat and deceiving. Dennis I feel slandered me in court by writing a letter withdrawing saying I wouldn't comply, and that is just ludicrist bc I hadn't talked to him like I said in 2 to 2 ½ years and I complied with everything he asked me to do I thought. If anything I feel he didn't comply. Then Bayview Loan Servicing is trying to make me look like the bad guy here and it it absolutely not true. I just want what is rightlfully mine and my rights as a homeowner and a consumer with a mortgage loan. If I hadn't been going through so much hardship I might have been able to get on them and have them held accountable for some of the actions and servicing of my loan back earlier, but I just knew that on my bank statements I would see they cashed my check and thought everything was okay. However I did know that by the converstations with customer service reps that they

werent very good at customer service or keeping their word, but as naive as it sounds I believed that a company would never do the things that Bayview has done to me to get me in this position. The next day I called Edward Schloss and he was not nice to me. I said to him Sir I don't owe this amount and he cut me off and asked if I read his letter – I said yes twice, and I was trying to locate it on my email in-box when he said I don't have time for this – read my letter and call me back. He would not wait for me to find it in my email and said I am a busy man – read it and call me back. I said I was a busy woman too, and cried after he hung up the phone. I called my mother in tears and was just beside myself that this was happening and what was I suppose to do. This is when I called and retained Ellen Lawson and paid her 750.00. She told me (my mother was with me as a witness not to pay this months mortgage and to pay her 750.00 since I was alread in this position. I was ready to lose it as I dont know whats going on but I thought she was going to look into the very beginning of this situation not just do a loan modification and not go back and see that it all started with Bayviews accounting practices and misapplied funds and no communication to let me know what was going on. They just continued over 3 years to accept my payments and write them down as partial payments or like when they claim I missed payments they put two payments in one month and claim I missed a payment. I get paid once a month and would send in the payment. I also have noticed that I only see two money order payments on their ledger. I have sent many more than 2 money orders. I dont have the money order tabs that you keep due to some more hardship that had taken place and all my papers were lost, however I am in the process of trying to get the copies from Circle k but have gotten the runaround there too. I am still in the process of getting those. I have sent a Qualified Written Request/certified mail this morning (August 26, 2016 to Bayview Loan Servicing attn Jennifer Steele and Stephen Rotella requesting documents since the inception to do a full audit of my account and have carbon copied Edward Schloss. Edward Schloss was not nice to me or cordial in anyway and I feel that as soon as he and Bayview get my certified written request letter and hear from you that he is going to get really nasty and I dont know what to do….. I didn't think an attorney could do that 2 weeks before Im done with my bankruptcy and I had already paid him for his service. I didn't even know what else I was suppose to do. This is why I was dealing with Lisa in Ed Maney office for the last two years bc I hadnt heard from Dennis in a long time, I have to say I had my suspicsions about whether Dennis had some material that maybe I was suppose to receive from him or be informed, but I was still angry bc I told my mom - how can this be happening when no one gets in touch with you to let you know anything….So since July 21, 2016 I have been seeing/talking to, asking for advice, totally confused and sick. My house means everything to me. I was a single mother purchased the house on my own worked very hard for my home and didnt have a clue this was going on. Come to find out when I got the letter forwarded to me from Dennis is when I looked at their so called ledger (first time I've ever seen anything regarding payments, but it still doesn't show where my payments are applied, what the balance is or interest, or anything pertinent. But it does show they depleted my escrow, charged me for partial payments, at times claimed I didn't make a payment, but I see where they have 2 payments posted in one month and then claim I missed a month…I would like to have Bayview Loan Servicing LLC investigated for predatory lending services. I am attaching all the documents I have ever received from Bayview as well as the attorney letters. I, since July 21, 2016 have been to 3 attorneys and retained one. However the one I retained was to find out what was going on and all she wants to do is a loan

modification and is very adimant about me signing these loan modification papers and I'm still very confused about signing loan modification papers which I wouldn't even be in this position if I would have been informed that my loan was headed in this direction. If anything I would think that this could have been straightened out if someone would have communicated with me regarding the jumping around with payment amounts and where they were being applied and we could have straightened out this partial payment issue before it came to them depleting my escrow account and all my positive monies that were on my loan before Bayview Loan Servicing got ahold of my loan.. Also, I currently am getting a refund check from my insurance agent Dan Firth any day now in the amount of 900+..When I had my insurance agent look into when I called him back in I believe 2014 to find out that I had hazardous insurance on my homeowners bc Bayview said I didn't and this was once of the reasons my payment went up. He remembered me  talking to him about it (remember I have had my insurance agent for 14 years now, so yes he did remember talking to me a few years back about Bayview making my home mortgage payment higher). I called him when all this started on about July 25, 2016 to ask him if he could get me a letter stating that I indeed talked to him about this and had him check into it. He called Bayview for me to tell them I did have coverage of Hazardous insurance and that was the first that Janell lowered my payment back down. Anyway, he also checked for me when I called him in July 2016 the coverage and all the documents since 2011 the inception of my loan from bayview. He did find that I was doubled billed hazardous incsurance in 2015 and this is what my refund is for. Why didn't Bayview ever mention this either???? I will forward you the copy of the check and any documents with it when I receive it. It should be here shortly probable the middle of next week.

I need assistance in questions that no one is answering for me...I don't know what to do. But I know what I would like done is a full audit of my loan since the inception before I move forward (or them) with anything. Thank you. Traci L. Brown

# TitleTracs Report

Prepared for:

**Traci Brown**

**417 East Wickieup**

**Phoenix, AZ**

December 12, 2016

*Disclaimer:  TitleTracs, Inc. is not a law firm.  TITLETRACS researches and investigates possible violations or discrepancies of existing financial and legal documentation that could substantiate the need for legal action, presenting our findings based on our expertise and experience. TitleTracs Reports are for informational purposes only.  It is entirely up to the client to decide what to do with the findings information.  TITLETRACS utilizes information obtained from several different resources and cannot be held liable or responsible for its accuracy or the outcome of any legal action resulting from information, or the lack there of, contained  in the TitleTracs report.  Services are provided for the sole purpose of presenting expertise in the area of finance, securitization, banking, MBS's and PSA's in which activities could result in potentially defective irregularities impacting the client's ability to hold marketable title.*

## AN INTRODUCTION TO THE TITLETRACS SOLUTION

The TitleTracs Report is the first step to establishing if your title is one of the 100 million titles corrupted by unlawful industry behavior, calling your rightful ownership into question. It is designed to;

- Determine IF the current owner of subject property holds a clear and marketable title;
- Determine if the lender you are paying each month is your true lender;
- Establish IF title meets the requirements for TITLETRACS Certification and listing in the TITLETRACS Registry.

The TitleTracs Report is not designed to take the place of a standard title search and policy. It is designed to complement it by providing awareness and a possible solution the standard title policy will not offer. TitleTracs does NOT rely on the accuracy (or inaccuracy) of what appears in county land records, nor do we take documents at face value, as do the title companies. We scrutinize the actual documents themselves and how they were written as well as other events that may have impacted your title. We search for fraudulent, missing or inaccurate information. We narrow our scope to 3-5+ of the strongest, most irrefutable events that will contribute to the success in an action to quiet title, should one be required.

We provide you with material facts uncovered in our research and our expertise in interpreting them based on years of experience in the title and legal industries. It only takes ONE event within the Chain of Title to cloud every event thereafter, requiring the need to restore title via Court Order. More discrepancies or questionable events may have been found, however, it is in your best interest to present the Court with a clear, concise and irrefutable summation of your claims to assure the highest level of success in quieting title.

If the findings warrant the need to quiet title, it is entirely up to you as to how to proceed or not. It is important to note that a Quiet Title action differs from regular court proceedings in that it is considered a judicial action (preventative adjudication) handled by a presiding judge who will decide the case based on its presented merits and not the weaknesses of Defendants. This differs from regular litigation (remedial adjudication) in that in a **Quiet Title action, <u>ownership of the mortgage must be proven</u>** whereas in standard litigation, such as foreclosure defense, only the **<u>right to enforce the mortgage is needed</u>**. There are no trials, no juries. This TitleTracs Report also includes all supporting documentation and material evidence supporting the allegations that can be presented to the Court in your action. Certified documents are available upon request an a nominal cost.

We commend you for being proactive in your decision to check your title now, <u>before</u> something turns into a lawsuit in which you must defend your ownership costing thousands of dollars later. There is a chance the issues found could remain dormant. However, mortgage fraud and bad documentation has been proven time and again and is not a problem that will just go away or can be "written around" by a title policy. And the magnitude of the damage is gaining exposure and media attention daily with the release of "The Big Short" and "99 Houses" movies to name just a few. Unknown past owners who experienced an illegal foreclosure are questioning what happened and may consider challenging it long after the fact. And you may not see it coming. TitleTracs is the only PRO-ACTIVE approach to warding off such attacks against your legal ownership.

### Your Options

It is important that you consult with a competent, licensed attorney in your state who truly understands the TitleTracs information and strategy and why this specific type of legal action may be preferred. We also suggest keeping the QT action separate from other litigation, if possible, so you still have options should your other litigation not be successful. These types of events are NOT the typical conveyance, lien and encumbrance issues that are covered by a standard title policy. These events did not exist prior to 1999 and were not something taught in law school. Nearly all findings focus on securities, tax and basic, Black-letter contract fraud law and common sense. MAKE SURE YOU TALK WITH AN ATTORNEY THAT TRULY UNDERSTANDS SECURITIZATION AND MORTGAGE FRAUD and how it applies to the need to quiet title as many do not.

### Important To Note.

The ramifications of this TitleTracs Report should be carefully considered when reviewing this information. Should there be suspicion or question to warrant the need to quiet title, your title is most likely unmarketable. Owners cannot legally sell it or insure it and it may not secure payment of the Note. It is quite possibly you could be paying a lender who has no legal right to enforce your Note as your mortgage may have been paid off entirely shortly after you closed, with the real owner of your Note (unknown investors) remaining unknown.

2

| Client(s): | **Brown, Traci** |
|---|---|
| **Property Address:** | **417 East Wickieup Lane, Phoenix, AZ 85024** |
| **County:** | Maricopa County |
| **Legal Description:** | Lot 82, Blue Hills, according to Book 46 of Maps, Page 23, records of Maricopa County, Arizona |
| **APN #:** | **209-11-088** |

## Findings Summary

It is important to note that we will only identify events that affect <u>TITLE</u> to property. It only takes one event to cloud everything thereafter, making clear ownership difficult if not impossible to establish. Following are the events we believe are the most indisputable. As we do everything possible to assure success in a legal action, the final determination lies with the Court.



**Part I:**    **The following events occurred prior to the Brown ownership**

**I.**    **Deed of Trust**                    **Previous Ownership – McDonough**

A **Deed of Trust** was written for the previous owner of subject property, Diane G. McDonough on 04/21/1999 with North American Mortgage Company. (Exhibit 1) It is in the amount of $68,354.

3

a)     On January 7, 2002, North American Mortgage Company was acquired by Washington Mutual, Inc. North American Mortgage Company formerly operated as a subsidiary of Dime Bancorp, Inc.   Previously, North American Mortgage Company was engaged in originating, acquiring, selling, and servicing mortgage loans, such as first-lien mortgage loans secured by single family residences.  They did not fund them. (http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=324327)

b)     Washington Mutual (WAMU), who acquired North American Mortgage in 2002, was in the habit of selling off its assets almost immediately into securitization.  WaMu, the nation's largest savings and loan company, collapsed with $310 billion of assets in the biggest failure in U.S. banking history. It had packaged billions of dollars of risky mortgages into securities and sold them to institutional investors in the run-up to the crisis.  Proper recording of the chain of title was never done.  It is unclear what happened to this debt. It quite possibly could be 'owned' by some unknown security somewhere who has no idea they own it so it would never be questioned.  Only the servicer of the debt would know as they had to forward payment on to someone.   http://ww2.cfo.com/legal/2016/08/jpmorgan-settles-fdic-wamu-deal/

c)     There is no **Release** of this debt recorded, therefore the debt is unresolved and potentially open to unknown future claims.  It is unclear what happened and who actually owns it, therefore clear and marketable title most likely was never obtained by current owner.  Once a title has been clouded, good title cannot be conveyed until it is resolved by Court order.     Pursuant to *AZ Rev Stat § 33-707 (2015),* which reads:

*B. When a mortgage or deed of trust is satisfied by a release or satisfaction of mortgage or deed of release and reconveyance, except where the record of such deed of trust or mortgage has been destroyed or reduced to microfilm, the recorder shall record the release or satisfaction of the deed of trust or mortgage showing the book and page or recording number where the deed of trust or mortgage is recorded.*

**II.     Sale/Deed Transfer                                   Previous ownership – McDonough**

a)     On 07/16/2001, McDonough sold/conveyed subject property to Homeward Bound, a non-profit organization that provides homes to homeless families.  (Exhibit 2)  https://homewardboundaz.org

b)     On 07/05/2005, Homeward Bound then sold subject property to current owner, Traci Brown. (Exhibit 3) However, as there is no satisfaction of the previous McDonough mortgage, causing a cloud on title which made Ms Brown's title unmarketable as well as Homeward Bound may have never actually received clear title themselves before selling it to Ms Brown.

**Part II:   The Brown Ownership**

**III.     Deed of Trust                                            Written 06/27/2005**

a)     A Deed of Trust was recorded in Maricopa County on July 5, 2005 with instrument #2005.922066 in the amount of $79,000 in favor of Security Mortgage Corporation (MERS Member ID # 1002755). (Exhibit 4). Per the AZ Secretary of State, this company was dissolved on 05/18/2011.

4



Search Date and Time:
**12/13/2016 1:17:47 PM**

File Number:
**08251820**

Corporation Name:
**SECURITY MORTGAGE CORPORATION**    AD-DISSOLVED-FILE ANNUAL REPORT 5/18/2011

b)    A search of the MERS ID # 1002755-0000003369-1 indicates the <u>servicer</u> as Bayview Loan Servicing, LLC.   The investor is identified as US Bank as Trustee.  It does not identify the full name of the Trust itself.

> *Select borrower type and enter borrower information to see Investor for MIN 1002755-0000003369-1.*
>
> ⦿ **Investor for Individual Borrower**
>
> > *Your entries may be either upper or lower case.*
> > *Fields marked ✱ are required.*
> > **Last Name:** | Brown | ✱
> > **SSN:** ☐☐☐ - ☐☐ - ☐☐☐☐ ✱
> > ☐ *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. ✱*
> >
> > [ Submit ]
>
> ⦿ **Investor for Corporation/Non-Person Entity Borrower**

**Servicer:**  <u>Bayview Loan Servicing, LLC</u>                          **Phone: (305) 341-3695**
                 **Coral Gables, FL**

**Investor:  U.S. Bank as Trustee**

[ Close Window ]

c)    As provided by client, a Mortgage Loan Owner Search Report dated October 4, 2016 and prepared by Full Disclosure, LLC discovered the alleged current owner to be US Bank as Trustee for the Bayview Financial Mortgage Pass-Through Trust 2006-A.

1)    However, there are  no assignments of Deed of Trust recorded in Maricopa County, AZ to properly effect this transfer.  It is unknown if there are any endorsements of the Note.

2)    A series of additional assignments should have been be recorded per the Pooling and Servicing Agreement: 1) from the originator to the Sponsor; 2) Sponsor to the Depositor; 3) Depositor to the Trust.   A Trust can only accept a loan from the Depositor, Bayview Financial Securities Company, LLC. who must certify and accept payment.   Per the Pooling and Servicing Agreement which reads:

*WHEREAS, the Depositor will acquire certain mortgage loans identified on Schedule I hereto (the "Mortgage Loans") pursuant to an assignment agreement dated as of January 1, 2006, by and between Bayview Financial Property Trust II, as assignor, and the Depositor, as assignee;*

5

https://www.lawinsider.com/contracts/5O4nfHv61dKrGzzzJlOJIw/bayview-financial-mortgage-pass-through-trust-2006/1350871/2006-02-22

     d)    As this did not occur, the Trust most likely did not receive this loan. As the Note has not been provided (recording of a Note is not necessary) review of any endorsements is not possible. It is unknown if client did the Qualified Written Response or if so, if they complied.

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

**FORM 8-K**

CURRENT REPORT PURSUANT
TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported)
April 7, 2006

Bayview Financial Mortgage Pass-Through Trust 2006-B
(Issuing Entity)

Bayview Financial Securities Company, LLC
(Exact Name of Depositor as Specified in its Charter)

Bayview Financial, L.P.
(Exact Name of Sponsor as Specified in its Charter)

Bayview Financial Securities Company, LLC
(Exact Name of Registrant as Specified in its Charter)

| Delaware | 333-122059 | 56-2336517 |
|---|---|---|
| (State or Other Jurisdiction Of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

     e)    The Arizona's Secretary of State shows no listing for Bayview Loan Serving, LLC as registered to do business within the state, active or inactive. https://www.azsos.gov/business. Per Bloomberg, Bayview "has operations in Dallas, Texas; Coral Gables, Florida; and Troy, Michigan." Not in Arizona. http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=20685923

     f)    The Trustee on subject document is identified as Security Title. There is also no such company registered with the Arizona Secretary of State. https://www.azsos.gov/business

     g)    The form used for this Deed of Trust is a Fannie Mae/Freddie Mac uniform instrument which leads one to believe they may have underwritten the loan.

             1)    If this loan was done properly in accordance with the Fannie Mae Trust Indenture and Custodial Agreement or the similar Freddie Mac documents, Fannie/Freddie would have taken legal title to this loan in 2005 and would have in its possession the original note and fully executed assignment of mortgage dated sometime in 2005, the loan origination date and prior to the MBS Issue Date. As it is unknown what trust this loan may have really gone into, a potential cloud of title results as ownership is in question.
             http://butlerlibertylaw.com/final-word-foreclosure-fraud/

     h)    The Notary acknowledgment alleges the client signed on June 30, 2005, although the mortgage states clearly it is written on June 27, 2005. This may not be a problem if the documents were printed days prior to closing in preparation, however, the acknowledgment also does not specifically or clearly state what "foregoing instrument" was

signed, thereby posing the possibility that this page could have been added at a different time, which has been proven to have occurred with various documents around the country.

     i)     There is no recorded Release of this mortgage as per *AZ Rev Stat § 33-707 (2015).*  As such, this leaves this debt in an unknown status (paid/not paid) with a potential to be challenged at any time by an unknown entity which is a potential cloud on title.

**IV.**    **DEED OF TRUST**                         **Recorded 07/05/05**

     A 2nd Deed of Trust was recorded in Maricopa County on July 5, 2005 with instrument #2005.922067 that included a Rider to the Note and Mortgage in the amount of $24,562 in favor of City of Phoenix/Housing Department. (Exhibit 5)  This loan appears to still be open and would fall in 2nd priority position by date.

     a)     The Notary acknowledgment on either document does not specifically or clearly state what Ms. Brown and Mr. Gonzalez, Director of the Housing Department are signing.

     b)     The Director is purported to have signed it on June 29, 2005 by one Notary. The client is purported to have signed it on June 30, 2005 by a different Notary. This calls into question when these documents may have been signed, as they are alleging to have been signed on different days.  It is unclear why the Rider would not be signed at closing on the 30th.

     c)     There is no recorded Release of this mortgage as per *AZ Rev Stat § 33-707 (2015).*  As such this leaves this debt in an unknown status (paid/not paid) with a potential to be challenged at any time which is a potential cloud on title.

**V.**    **Second Mortgage Deed of Trust #1**               **Recorded 02/02/06**

     A Second Mortgage Deed of Trust was recorded in Maricopa County on February 02, 2006 with instrument #2006.157982 in favor of Arizona Federal Credit Union in the amount of $20,000. (Exhibit 6)   This loan appears to still be open and would fall in 3rd priority position by date.

     1)     The document states "Second Mortgage Deed of Trust" although there is already one prior 2nd loan secured by the said real property.  There are no recorded satisfactions of prior liens to allow this document to be a "2nd" mortgage.

     2)     At the bottom of the Official Stamp of the Clerk's office it states "11 of 37".  Further investigation of the rest of this document may be required.

**VI.**    **Second Mortgage Deed of Trust #2**              **Recorded 02/16/06**

     Another "Second Mortgage Deed of Trust" was recorded in Maricopa County on February 16, 2006 with instrument #2006.222806 in favor of Arizona Federal Credit Union in the amount of $30,000. (Exhibit 7)  This loan appears to still be open and would appear to be in 4th priority position by date.

     1)     The document states "Second Mortgage Deed of Trust" although there are two (2) prior 2nd loans secured by the said real property.  There are no recorded satisfactions of prior liens to allow this document to be a "2nd" mortgage.

     2)     At the bottom of the Official Stamp of the Clerk's office it states "7 of 8".  Further investigation of the rest of this document is advised.

**VII.**    **Second Mortgage Deed of Trust #3**              **Recorded 01/23/08**

Another "Second Mortgage Deed of Trust" was recorded in Maricopa County on January 23, 2008 with instrument #2006.59698 in favor of Arizona Federal Credit Union in the amount of $38,000. (Exhibit 8) This loan appears to still be open and would appear to be in 5th priority position by date.

    1)      The document states "Second Mortgage Deed of Trust" although there are three (3) prior 2nd loans secured by the said real property. There are no recorded satisfactions of prior liens to allow this document to be a "2nd" mortgage.

    2)      At the bottom of the Official Stamp of the Clerk's office it states "11 of 65". Further investigation of the rest of this document may be needed.

    3)      A recorded Release filed in county land record on 08/26/2016. (Exhibit 9)

## IIX.   Corporate Assignment of Deed of Trust              Recorded 01/23/15

A Corporate Assignment of Deed of Trust was recorded in Maricopa County on January 23, 2015 from MERS as Nominee for Security Mortgage Corporation to Bayview Loan Servicing, LLC. (Exhibit 10)

    1)      A search of the MERS database for MIN #100275500000033691 reveals Bayview Loan Servicing, LLC is servicer to the DOT. As such, ownership is unclear – Fannie/Freddie or US Bank as Trustee for some unknown Trust. Either way, there is no clear chain of assignment or true identity of the investor to either entity and a potential cloud on title.

    2)      Bayview Loan Servicing, LLC is not, nor has ever been licensed to do business in the State of Arizona.

    3)      Robert G. Hall signed this Assignment as Assistant Secretary for MERS as nominee for Security Mortgage Corp. Mr. Hall, in his self-posted LinkedIn profile, is a Vice President at Bayview Financial, parent company to Bayview Loan Servicing LLC in Florida. https://www.linkedin.com/in/robert-hall-011bb57 As there appears to be no Corporate Resolution showing authority to sign this document as per the MERS handbook, it remains questionable if it is a valid transfer. The following paragraph is taken from the MERS AGREEMENT FOR SIGNING AUTHORITY form:

*3. The parties acknowledge that Mortgage Electronic Registration Systems, Inc. may be the mortgagee of record on Member's mortgages. Therefore, in order for <u>Vendor to perform its contractual duties to Member, MERS, by corporate resolution,</u> will grant employees of Vendor the limited authority to act on behalf of MERS to perform certain duties. Such authority is set forth in the Resolution, which is made a part of this Agreement.*

        a)      As Security Mortgage Corporation was dissolved on 5/18/2011, authorization initiating the transfer as owner of the debt could not be done.

        b)      Different versions of Mr. Hall's signature exist on documents outside of this Chain of Title that are clearly not written by the same person. This suggests robosigning and possible forgery, that legal presumptions involving the alleged facial validity of this instrument may not apply causing a potential cloud on title as no reconveyance legally occurred.

        c)      Following are two samples of allegedly the same person's signature. As such, it is unclear which is the true signature, if any. The common denominator to each document is Bayview.

          Client's document                            Unrelated document

SECURITY MORTGAGE CORPOI
On _____

By _____
ROBERT G. HALL, Assistant Secretary

GNOR: WACHOVIA BANK, N.A. AS TRUSTEE, SUCCE! IONAL BANK BY IT'S ATTORNEY-IN-FACT BAYVIEW L

By: _____

NAME: ROBERT G. HALL
TITLE: Vice-President

8

## Summary

**IT IS OUR OPINION EVIDENCE EXISTS THAT CALLS THIS CHAIN OF TITLE INTO QUESTION.**

We believe there to be questionable events within the Chain of Title that may have rendered title unmarketable.  It is our opinion that a clear chain of recorded ownership did not occur.  It is unknown if client was able to retrieve any original Notes via QWR.   These documents could shed more light on ownership, however, due to the parties involved in each transaction, ownership may be forever unknown as the supporting chain of title is not complete.

It is important that all questions are resolved and title is accurate and in properly recorded, legal order to enjoy the full benefits and rights afforded property ownership without fear of possible repercussions at any time in the future.  It is also vital that the County land record for this property are made accurate as so many important decisions rely on this information.

***Please note this property will not be eligible for TITLETRACS Certification until resolved.***

TITLETRACS is happy to assist you or your attorney in any way with additional supporting documentation and recent case law that may be needed to support our findings.  Should any questions arise, please don't hesitate to contact an attorney or email us at info@titletracs.com.

9